**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CHAMBERS OF**
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

**MARTIN LUTHER KING COURTHOUSE**
**50 WALNUT ST. ROOM 4066**
**NEWARK, NJ 07101**
**973-297-4903**

September 29, 2026

VIA ECF
All Counsel of Record

**LETTER ORDER**

**Re: Davenport, et al. v. RealPage, Inc., et al.**
**Civil Action No. 25-3057**

Dear Litigants:

Pending before the Court are two motions filed in response to this Court's March 31, 2026 Opinion and Order granting in part and denying in part five separate motions to dismiss. See ECF No. 160 ("Opinion"); ECF No. 161 ("Order"). Plaintiffs[1] have filed a Motion for Leave to File an Amended Complaint. See ECF No. 211 ("Motion for Leave"); ECF No. 211.3 ("Proposed Amended Complaint" or "PAC"). The PAC includes new allegations intended to address the pleading deficiencies identified in the Court's Opinion regarding Defendant AvalonBay Communities, Inc.'s ("AvalonBay") involvement in the asserted antitrust conspiracy. AvalonBay opposes the Motion for Leave. See ECF No. 221 ("Motion for Leave Opposition").

Separately, AvalonBay has filed a Motion for Reconsideration. See ECF No. 178 ("Reconsideration Motion"); ECF No. 178.1 ("Memorandum of Law" or "MOL"). The Reconsideration Motion challenges the Court's determination that the New Jersey state law unconscionable commercial practices claim was sufficiently pleaded against AvalonBay. Plaintiffs oppose the Motion. See ECF No. 193 ("Reconsideration Opposition").

For the reasons set forth below, the Motion for Leave is **GRANTED** and the Reconsideration Motion is **DENIED**.

[1] Plaintiffs are Jennifer Davenport, Attorney General of New Jersey, and Christopher L. Peterson, Acting Director of the New Jersey Division of Consumer Affairs (collectively, "Plaintiffs"). The case caption has been revised to reflect the substitution of each Plaintiff. See Fed. R. Civ. P. 25(d).

## I. BACKGROUND[2]

This case is one of several currently pending against Defendant RealPage, Inc. ("RealPage") and various landlords primarily asserting that the Defendant Landlords[3] and RealPage have colluded to fix rental prices at their properties in violation of federal and state antitrust laws.

The price-fixing conspiracy is facilitated through RealPage's three Revenue Management Software ("RMS") programs called YieldStar, AI Revenue Management, and most relevant here, Lease Rent Options ("LRO," and collectively, the "RM Products"). See ECF No. 1, Compl., at ¶¶ 6, 30, 32. Defendants Landlords use the RM Products to share their confidential, competitively sensitive business data with RealPage, and act with an understanding that their competitors are doing the same. See id. ¶¶ 32, 37, 79–80. This data includes occupancy rates, inventory, prices of actual leases, concessions offered to tenants, weekly totals of prospective tenants visiting properties, amenities and rental unit values, and pricing strategies (collectively, "Confidential Data"). See id. ¶¶ 5, 79, 88–90.

The RM Products use algorithms that analyze this Confidential Data and recommend rental price increases to each Defendant Landlord to ensure all are increasing rental prices to maximize revenue. See id. ¶¶ 114–32. RealPage then enforces adherence with these "recommended" prices through a multi-layered monitoring system. See id. ¶¶ 134–53. This arrangement represents "a fundamental departure from the traditional, competitive marketplace that historically existed for multifamily rentals" because it has transformed competitors into collaborators and has pushed landlords to prioritize increasing rental prices over decreasing unit vacancies. See id. ¶¶ 3, 55–56, 67, 131, 162, 171.

Based on these allegations, the Court determined that the Plaintiffs had sufficiently pleaded a price-fixing conspiracy against RealPage and the Defendant Landlords. See Platkin v. RealPage, Inc., No. 25-3057, 2026 WL 2056350, at *6–14, 16 (D.N.J. Mar. 31, 2026). It determined, however, that Plaintiffs had failed to allege that AvalonBay, which uses RealPage's LRO product, participated in this conspiracy. See id. at *14–16. This was based on AvalonBay's unique contractual arrangement with RealPage that prevents RealPage from sharing AvalonBay's Confidential Data with other landlords ("Input Representation") or incorporating other landlords' Confidential Data into the price recommendations RealPage provides to AvalonBay ("Data Entry Representation," and with the "Input Representation," the "Data Restriction Provisions"). See Compl. ¶ 20; see also ECF No. 221.1, Decl. of Jennifer L. Giordano in Supp. of AvalonBay Communities, Inc's Opp. to Plfs.' Motion for Leave to Am. ("Declaration"), Ex. 5 ("Master Service Agreement" or "MSA") at 7–8 (§ 4.5).

---

[2] The Court focuses primarily on the factual allegations that are pertinent to the instant Motions. Citations to the Complaint refer to the operative Complaint; citations to the PAC identify newly proposed allegations against AvalonBay.

[3] The Defendant Landlords in this case are Morgan Properties Management Company, LLC; The Kamson Corporation; LeFrak Estate, L.P.; Greystar Management Services, LLC; AION Management, LLC; Cammeby's Management Co. of N.J., L.P.; Veris Residential, Inc.; Bozzuto Management Company; Russo Development, LLC; Russo Property Management, LLC; and AvalonBay. This Order's reference to "Defendant Landlords" excludes AvalonBay, who is addressed in its individual capacity.

Plaintiffs initially alleged that these provisions were a "nominal[]" restriction that AvalonBay circumvented by participating in certain LRO User Group meetings where they exchanged Confidential Data with other landlords. See Compl. ¶¶ 20, 90, 93, 97–104. In their opposition to AvalonBay's motion to dismiss, Plaintiffs went further and stated that AvalonBay then took the Confidential Data collected through these meetings and manually input it into LRO to avoid the Data Restriction Provisions. See ECF No. 143, Pls.' Br. in Opp. to AvalonBay Communities Inc.'s Mot. to Dismiss the Compl., at 11, 21–22. The Court ultimately rejected Plaintiffs' allegations for two reasons. First, Plaintiffs failed to plead in the Complaint the full extent of AvalonBay's circumvention scheme—including, specifically, AvalonBay's use of LRO's manual input function to evade the Data Restriction Provisions. See Platkin, 2026 WL 2056350, at *15. Second, Plaintiffs also failed to plead how using the manual input function would allow AvalonBay to avoid the Data Entry Representation's restriction barring RealPage from allowing its algorithm to generate rental prices based on this manually input Confidential Data. See id. It therefore dismissed the federal antitrust claim against AvalonBay without prejudice. See id. at *16.

The Court also dismissed without prejudice the New Jersey Antitrust Act and certain New Jersey Consumer Fraud Act ("NJCFA") claims asserted against AvalonBay. See id. at *16–18, 21–22. However, it determined that Plaintiffs had sufficiently pleaded that all Defendant Landlords—including AvalonBay—had committed unconscionable commercial practices under the NJCFA. See id. at *20–21. Specifically, it held that the Defendant Landlords' use of daily price changes and exploding offers were unlawful tactics designed to take advantage of a negotiating power imbalance and pressure consumers into accepting misleading, supracompetitive rental prices. See id.

AvalonBay then filed the Reconsideration Motion. It argues that the unconscionable commercial practices claims that the Court sustained are based on, and intertwined with, the conspiracy to fix prices and charge "inflate[d]" or "supracompetitive" rental rates. See MOL at 4–5, 7–9; Compl. ¶¶ 202–05. The Court, however, concluded that Plaintiffs failed to allege AvalonBay was part of that conspiracy. See MOL at 10–11. AvalonBay contends that the Court therefore erred by sustaining the unconscionable commercial practices claim against it. See id. at 5, 10–11. Plaintiffs oppose the Reconsideration Motion primarily on the grounds that AvalonBay's argument rests on a misinterpretation of this Court's holding on this issue. See generally Recons. Opp.

Plaintiffs subsequently filed the Motion for Leave seeking to file the PAC. See generally Mot. for Leave. The PAC seeks to fill the pleading gaps the Court identified. It alleges that AvalonBay has long understood that for LRO to work effectively, its algorithm needs Confidential Data from competitors. See PAC ¶¶ 117, 124–30. AvalonBay therefore requires its employees to "routinely obtain[] confidential, competitively sensitive information from its competitors and enter[] that information directly into LRO to fuel the LRO software's pricing outputs." See id. ¶¶ 118, 121, 138. This includes through direct phone calls. See id. ¶¶ 119–21. It then offers its Confidential Data to certain Defendant Landlords in exchange. See id. ¶ 123. This information exchange has extended all the way to the top of AvalonBay's leadership structure, where its executives have exchanged sensitive pricing information related to renewal rates, late fees, and rent abatements with other competitors' executives. See id. ¶ 140.

AvalonBay (and other Defendant Landlords) circumvent the Data Restriction Provisions through LRO's segregated database system. Specifically, LRO consists of two separate databases: (1) a user-specific database that contains non-public data supplied by each user; and (2) a centralized database, called the "LRO Data Warehouse," that contains non-public data from "many different landlords." Id. ¶¶ 114–15. Individual users can manually supply their user-specific databases with both non-public data regarding their own properties and non-public data about competitors' properties. See id. ¶¶ 114, 116. The Data Entry Representation restricts RealPage from using data from the LRO Data Warehouse in the rental prices it generates for AvalonBay. See id. ¶ 116. It does not, however, restrict RealPage from generating rental prices using the data AvalonBay inputs into its own user-specific database (or from generating rental prices for competitors that manually input Confidential Data received from AvalonBay into their own user-specific databases). See id.

According to Plaintiffs, AvalonBay has also maintained a close relationship with the conspiracy's hub, RealPage. It regularly meets with RealPage to review LRO's performance and has audited its employees to ensure they comply with LRO's "recommended" prices. See id. ¶¶ 131–32. And RealPage notifies AvalonBay if its manually input data has become "stale"—i.e., is more than seven days old—so it can update its user-specific database. See id. ¶ 122. AvalonBay also plays a more active role than other Defendant Landlords in maintaining LRO for RealPage. It is a member of a small advisory board that reviews and approves LRO product changes for RealPage before they are shared with other users. See id. ¶¶ 133–35. And it previously chaired the LRO User Group from 2019 to 2021, through which it acted as RealPage's "advocate/voice" among the LRO "user base" and coordinated changes among LRO's users on the product's pricing parameters. See id. ¶ 136.

AvalonBay opposes the Motion for Leave. It contends that the new allegations Plaintiffs provide are insufficient to address the pleading deficiencies the Court identified and that amendment would be futile. See generally Mot. for Leave Opp.

## II. Legal Standard

Under Federal Rule of Civil Procedure 15, a party may seek the court's leave to file an amended pleading, which the "court should freely give [] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 bends in favor of amendment, see Mullin v. Balicki, 875 F.3d 140, 150 (3d Cir. 2017), and leave must therefore "generally be granted unless equitable considerations render it otherwise unjust," Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006).

Under Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(i), a party may move for reconsideration of an order or judgment of the court. "Motions for reconsideration are granted sparingly because federal courts have a strong interest in the finality of judgments." In re Metro. Life Ins. Co. Sales Prac. Litig., No. 96-179, 2012 WL 1378307, at *2 (W.D. Pa. Apr. 19, 2012) (quotation marks omitted). To obtain such relief, the moving party must show: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court ruled on the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. See Max's Seafood Café ex rel. Lou-Ann v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

## III. Analysis

### A. The Motion for Leave

In the Third Circuit, when determining whether to grant a motion seeking leave to file an amended complaint, courts consider: (1) undue delay; (2) bad faith or dilatory motive; (3) prejudice to the opposing party; and (4) the futility of amendment. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Here, AvalonBay only contests leave to amend on the basis of futility. See generally Mot. for Leave Opp.[4]

When assessing futility, a court determines whether the proposed amended complaint can "withstand a motion to dismiss." Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). The proposed allegations are evaluated under the same standard of legal sufficiency as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010). Under that standard, the court must dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal on this ground is proper if the complaint does not provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Huertas v. Bayer US LLC, 120 F.4th 1169, 1174 (3d Cir. 2024).

"A determination as to futility does not require a conclusive determination on the merits of a claim or defense; rather, the futility of an amendment may only serve as a basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim that is legally insufficient on its face." Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000). Courts, in turn, "place a heavy burden on opponents who wish to declare a proposed amendment futile." Id. Here, AvalonBay has not carried that "heavy burden." Id. Plaintiffs' new allegations regarding AvalonBay's involvement in the asserted price-fixing conspiracy address the specific pleading deficiencies the Court identified in its Opinion and make AvalonBay's involvement in this scheme plausible.

Based on the developing caselaw concerning algorithmic-pricing, the Court explained that "to infer a price-fixing conspiracy among RMS users, plaintiffs must allege that competitors knowingly provide their Confidential Data to the RMS provider, and that all competitors' Confidential Data is com[m]ingled and used by the RMS to generate supracompetitive prices for each competitor to charge." See Platkin, 2026 WL 2056350, at *14; see also Cornish-Adebiyi v. Caesars Ent., Inc., 184 F.4th 172, 190 (3d Cir. 2026) (holding that allegations that competitors

---

[4] Although AvalonBay only challenges the Motion for Leave on futility grounds, the remaining considerations also support leave to amend. Plaintiffs filed the Motion for Leave just over three months after the Court issued its Opinion and before discovery has commenced. That timing does not constitute a "protracted and unjustified" delay. Mullin, 875 F.3d at 151. The request lacks any "clear evidence of abuse"; in fact, the PAC represents a good faith effort to address the specifically identified pleading deficiencies. Diorio v. Harry, No. 16-1678, 2020 WL 1140307, at *4 (M.D. Pa. Mar. 9, 2020). And there is no indication at this early stage that amendment would prejudice AvalonBay by impairing its ability to present its case. See Dole v. Arco Chem. Co., 921 F.2d 484, 488 (3d Cir. 1990).

"knew and understood that the recommended" algorithm prices they received were based on "real-time, non-public pricing and occupancy data [that] they and their co-defendants were all providing to the platform" was sufficient to allege a price-fixing conspiracy (quotation marks omitted)). The Court explained that, as previously pleaded, Plaintiffs failed to show AvalonBay was involved in the "requisite exchange of confidential information" to be implicated in the asserted conspiracy. See Platkin, 2026 WL 2056350, at *14 (quotation marks omitted). There were no allegations that AvalonBay circumvented the Data Restriction Provisions and manually commingled its own Confidential Data with that obtained from other Defendant Landlords in LRO. See id. at *15. And there were no allegations explaining how AvalonBay could actually circumvent the Data Restriction Provisions. See id.

Plaintiffs have addressed both of those concerns. They explicitly allege that AvalonBay directly engaged in the exchange of Confidential Data with other Defendant Landlords. See PAC ¶¶ 118, 123. They allege that AvalonBay did so through phone calls and executives' interactions. See id. ¶¶ 119–21, 140.[5] They allege that AvalonBay uploaded this data into LRO and mixed it with its own Confidential Data to make LRO function effectively and generate increased rental prices. See id. ¶¶ 117–18, 124–30. They allege that AvalonBay enforced compliance with these prices, and that RealPage ensured AvalonBay was relying on updated Confidential Data. See id. ¶¶ 122, 131–32. They allege that AvalonBay avoided the Data Entry Representation's restrictions because LRO uses a segregated database that only prevented LRO's algorithm from pulling information from the central LRO Data Warehouse, not AvalonBay's user-specific database. See id. ¶¶ 114–16. And they go further and allege AvalonBay was working directly with RealPage as part of various groups to refine the LRO product. See id. ¶¶ 133–36. This is sufficient to plausibly allege AvalonBay utilized RealPage's RM Products to participate in the asserted price-fixing conspiracy with RealPage and the other Defendant Landlords.

AvalonBay asserts amendment is futile on several grounds. It contends that in contrast with Plaintiffs' allegations, it has unilaterally used LRO and avoided information sharing with RealPage or its own competitors for decades. See Mot. for Leave Opp. at 20–24. It further argues that it has only collected or exchanged publicly available information with competitors. See id. at 24–30, 32–35.[6] To support these arguments, AvalonBay relies heavily on eleven documents that it asserts are incorporated by reference in the PAC and may therefore be considered by the Court. See Mot. for Leave Opp. at 18–20. But, as explained below, at this stage the Court cannot consider many of these documents. And for those that may potentially be considered,

---

[5] It is immaterial that AvalonBay may have participated in the price-fixing conspiracy using direct methods of information exchange, whereas the other Defendant Landlords used the RM Products as an indirect conduit to exchange their data. See, e.g., In re Processed Eggs Prods. Antitrust Litig., 821 F. Supp. 2d 709, 742 (E.D. Pa. 2011) (explaining that "there is no requirement that allegations pertaining to one defendant mirror those against other defendants in terms of [the] specific conduct or 'quantity' of alleged 'bad acts'").

[6] AvalonBay also argues that the Court previously held Plaintiffs' allegations were independently insufficient because they did not assert that RealPage and AvalonBay entered any written amendment to the Data Entry Representation that would allow the LRO algorithm to incorporate AvalonBay's competitors' Confidential Data, and the PAC fails to include any allegations to this effect. See Mot. for Leave Opp. at 31–32. But Plaintiffs have pleaded a workaround to the Data Entry Representation. They allege that LRO uses a segregated database and the Data Entry Representation only prevented AvalonBay's Confidential Data from being incorporated into (and used to form rental prices from) the LRO Data Warehouse, not individual user-specific databases. See PAC ¶¶ 114–16.

AvalonBay's arguments rely on a series of inferences it improperly asks the Court to draw in its favor to contradict the PAC's allegations.

First, under the Rule 12(b)(6) standard, the Court may only consider documents that are "integral to or explicitly relied upon in" the PAC. Burlington Coat Factory, 114 F.3d at 1426 (quotation marks omitted); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (explaining courts may consider "documents incorporated into the complaint by reference"). AvalonBay attempts to smuggle certain documents into the Court's analysis by pointing to allegations in the PAC that it argues refer to them; yet, when fairly read, these allegations are not incorporating these documents by reference. For example, AvalonBay claims that the PAC's reference to RealPage's acquisition of LRO in ¶ 20 incorporates by reference interrogatory responses from another case about that acquisition. See Mot. for Leave Opp. at 15; Decl., Ex. 6. It also asserts that the PAC's claim that AvalonBay's contract with RealPage does not restrict AvalonBay from inputting Confidential Data into LRO in ¶ 113 incorporates by reference AvalonBay's "Code of Business Conduct and Ethics." See Mot. for Leave Opp. at 16–17; Decl., Ex. 7. But the PAC never explicitly references these documents or their contents. The Court declines AvalonBay invitation to stretch the incorporation by reference doctrine beyond its strict limits at the pre-discovery pleadings stage and disregards these documents.[7]

Second, even if the Court may consider certain of these documents at this stage, it may not draw inferences from them to resolve factual disputes in AvalonBay's favor. See Huertas, 120 F.4th at 1174 (explaining that courts must accept a plaintiff's well-pleaded allegations as true and draw inferences in the plaintiff's favor). But that is what AvalonBay asks the Court to do. For example, to support its contention that it only used LRO unilaterally and abided by the Data Restriction Provisions, AvalonBay relies on language under the "Recommendation" section of its "Request to Proceed Memorandum" from 2008 evaluating whether to adopt LRO that states that the "collection of competitive rental information will be completed via the public domain." Decl., Ex. 1 at 33–34. Based on this language, AvalonBay contends that it only agreed to use LRO after assuring itself LRO "could recommend prices solely based on AvalonBay's own information and publicly available information." Mot. for Leave Opp. at 22. But that is an inferential leap drawn from this document's "[r]ecommendation" that information be collected "via the public domain," not something the document makes clear on its face. Decl., Ex. 1 at 33–34.[8]

Similarly, to support its contention that it only collected and shared public information to use LRO, AvalonBay relies on emails that it argues show "internet searches, not phone calls, were the norm[al]" way its employees collected competitors' information. Mot. for Leave Opp. at 14,

---

[7] For substantially the reasons Plaintiffs' identify, Exhibits 6, 7, 8, and 9 are neither integral to nor explicitly relied upon in the PAC and the Court declines to consider them. See ECF No. 231, Reply Memo. of Law in Supp. of Pls.' Mot. for Leave to Amend the Compl., at 14–15.

[8] To support this same contention, AvalonBay also relies on the absence of the "Auto Comp" feature from an Order Form appended to the MSA it executed with RealPage in 2017. See Decl., Ex. 5 at 14. This feature would have automatically updated LRO with competitors' pricing information, and AvalonBay argues that its absence shows it "personally controlled the data that LRO used to make recommendations" to it. See Mot. for Leave Opp. at 23. But that is a negative inference AvalonBay asks the Court to draw in its favor. Such an inference would be improper absent further discovery, especially considering AvalonBay also provided documents showing the MSA was later amended (and therefore reasonably may have been amended to include this or other information sharing features). See Decl., Ex. 10.

28–29; Decl., Exs. 3, 4. It also points to emails that reference "market survey[s]" that it claims show the price information it obtained "was plainly publicly advertised information." Mot. for Leave Opp. at 29 n.9; Decl., Ex. 11. But none of these emails make clear that AvalonBay only gathered Confidential Data from public sources; these, again, are inferences AvalonBay asks the Court to draw from the content and context of these communications. That is improper at this stage.

In sum, Plaintiffs allege in the PAC that AvalonBay directly exchanged Confidential Data with Defendant Landlords and used a workaround in LRO's database system "to participate in th[e] broader conspiracy." Platkin, 2026 WL 2056350, at *15 n.16. AvalonBay contends that it did neither of these things based on inferences it draws from the documents it has provided. This is a quintessential factual dispute. Were the Court to resolve this dispute now, it would have to convert AvalonBay's Motion for Leave Opposition into a motion for summary judgment. See Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 474 n.21 (D.N.J. 1998). But such an action would be improper given discovery has not yet occurred in this case. See Kurdyla v. Pinkerton Sec., 197 F.R.D. 128, 131 & n.8 (D.N.J. 2000). Discovery may ultimately support AvalonBay's account. But Plaintiffs' pleadings have earned them the opportunity to test whether the inferences AvalonBay seeks to draw from these (and likely other) documents are reasonable and verifiable. Accordingly, the Motion for Leave to file the PAC is granted.

### B. The Reconsideration Motion

AvalonBay's Reconsideration Motion presents a syllogistic argument: (1) the Court held that the Plaintiffs pleaded that the Defendant Landlords pricing tactics constituted unconscionable commercial practices because the ultimate prices charged were misleadingly inflated based on an unlawful price-fixing conspiracy; (2) the Court held that Plaintiffs failed to plead AvalonBay was part of that conspiracy; (3) therefore, the Court erred by holding Plaintiffs pleaded an unconscionable commercial practices claim against AvalonBay. See generally Recons. Mot. A necessary premise for this argument is the Court's prior conclusion that the operative Complaint did not plausibly allege AvalonBay's participation in the price-fixing conspiracy. The Court now grants Plaintiffs leave to file the PAC, which cures the deficiencies the Court previously identified. Because the PAC will be the operative pleading, AvalonBay's request to reconsider the viability of the unconscionable commercial practices claim under the prior Complaint is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Leave, ECF No. 211, is **GRANTED**, and the Reconsideration Motion, ECF No. 178, is **DENIED**. Plaintiffs are **ORDERED** to file the Proposed Amended Complaint, ECF No. 211.3, within seven (7) days of this Order.

**SO ORDERED**.

***s/ Madeline Cox Arleo***
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**